And we'll go to Plainfield, North Plainfield versus Zurich American. Chris, you can take this. I'll want it in Chambers, but, yeah, thanks. Good afternoon, Your Honors. Good afternoon. Were you here when I explained why we don't have the two of us? I was, Your Honor, and I will speak as slowly and clearly as possible. Yeah, I just want to be sure that when he gets this, it's meaningful. I will be cognizant. Thank you. And you're going to tell us who you are. Yes. May I please have the court? I'm William Greenberg from Greenberg-Manassian. On behalf of the North Plainfield Board of Education Council, Mr. Ulsamer, Your Honors, today, first of all, I'd like to reserve five minutes of my time if it may please the court. That's granted. Thank you. Today we ask the court to correct a manifest injustice. In denying the Board of Education coverage for a defense for this large litigation that is the underlying matter, the district court erred in several ways. What is the claim? I mean, what's the totality of the three claims? The totality of three claims is an overwhelming set of facts, three different litigations, three different contracts, one, the largest construction project in the history of the North Plainfield Board of Education for three different buildings, Isn't it five schools? Again, I didn't represent the Board of Education in the underlying matter, so I have a facility with those facts, but they are not at the forefront of my mind. But it is a very large project, and the litigation has been ongoing for years, thousands and millions of dollars. Did you try to settle this? Did you go to mediation? Oh, Judge, this has a tortured history. The D&D, one of the main plaintiffs, also filed bankruptcy. So bankruptcy was an issue. Everything was stayed for years. There were numerous – I mean, you went to our mediation panel? Well, if you're asking about the D&D case or the underlying cases, I was not involved in those cases, so I don't know the exact – Is D&D the biggest of the – D&D is the biggest, and D also has the most recent decision. And it has a law of 16. We know all about the 16 parts. Yes, 16, and then it was amended. But those – my knowledge and my appeal is specifically related to the insurance coverage part of it. I know there were attempts, but I was not involved in any of those. I was involved in some settlements involving the insurance coverage because there were other insurers involved at a particular time. But the court here erred in several different ways. First of all – Let me ask you a basic question. An errors and omission policy issued to a board of education, isn't that designed to cover missteps that the board may have made in its role as an educator rather than in the contracts it draws up for construction? No, Your Honor. The errors and omission policy to an architect, I can see how that might cover problems with the functioning of the architect in that profession. But errors and omission policies aren't general liability policies, right? No, they are not. They're there specifically to cover wrongful acts of the board. And that's exactly – In their profession. In their profession. But if you look at the policy itself and the exclusions of the policy, you'll see that it contemplates far more than just in the educational realm. For example, fraud. There's specific inclusions and exclusions. Well, you can have fraud. Fraud, pollution. Yeah, you can have fraud. You can have fraud in how you set up your student loan program and what you require of your students. Well, this is a public school. It's a public undergraduate. I'm just saying that fraud in the educational professional sense can exist. For example, arising out of the failure to affect or maintain any insurance bond. That's one of the exclusions that's in this case. And insurance bond is, in particular, directed toward the most significant thing you would have a bond for would be for construction. Construction is part of what the Board of Education does. They don't just educate. They have to provide the facilities. It is one of the main functions of the Board of Education is to provide appropriate facilities. There have been cases that have gone throughout all of the courts in the United States that have dealt with what is it that the Board of Education must provide in terms of facilities. So facilities is an integral component of what a Board of Education does. And in this particular instance, the main error, the most obvious error of the district court is that it just failed to engage in a plain reading of the policy. It also applied, misapplied the Hoobagant decision. The district court also failed to follow Flommerfeld. Which decision? The Hoobagant decision, the Third Circuit decision of this court. Failed to follow the Flommerfeld decision. The district court improperly relied on American motorists, and resultingly the district court eviscerated the insurance policy the Board of Education bought so as to create no insurance insurance. Do you really read Flommerfeld as overturning American motorists when it comes to this issue of construction contracts and breach of contract and what may arise from it? I mean, Flommerfeld is dealing really, isn't it, whether injury is caused by drunkenness or use of drugs or one being covered by the policy and one not being covered by the policy. And I think that is a very different situation from what we have here, where you're dealing with a straight breach of contract case with no issue about whether the contract was broken by cause A or cause B. I disagree with that interpretation of a straight breach of contract clause. What we had was we had one count of breach of contract and 15 tort claims. What we have, what your question really asked was, does Flommerfeld overrule American motorists? And the answer is, in the context of concurrent causes, the answer is yes. The Flommerfeld court specifically says this is an inherent ambiguity that prior to that case, prior to the presentation of those types of facts, it was an ambiguity that they had not anticipated. Flommerfeld says that there is, that arising out of breach of contract is not inherently plain and clear and unambiguous, but depending on the facts, depending on the circumstances, depending on the multiple causations, that it is ambiguous. But you need go no further than the reading of this policy in order to see that that exclusion didn't even apply to the allegations of breach of contract. I point to the face of the policy, and in particular, I point to plaintiff's appendix at page 211. The Flommerfeld court used the visual analysis of lying the policy side-by-side with the complaint. But I say to you, look at page 211 at the exclusions clauses and look at them side-by-side, and your honors will see quite clearly that there are exclusions that deal with and are triggered by allegations. For example, the very first one, alleging fraud. As opposed to the very next one, arising out of false arrest. When the drafters of this- Excuse me. Yes. We don't have things like page 211 until- I'm sorry, I didn't hear you, Your Honor. Say that again. The enumerated hard copies of the appendix were never sent to us, I'm advised. They're on the electronic hard copies? So we can print them out? We can. Okay. Go ahead. I can provide your honors with an extra copy, which I have, if you'd like. No, go ahead. But the visual imagery that the Flommerfeld court was using is particularly appropriate here. What we have is we have a policy, when they wanted to exclude allegations, they knew how to write it. For example, number one, alleging fraud, dishonesty, or criminal acts. The exclusion talks about allegations. When they wanted to change it into a reimbursement clause, they knew how to write that as well. For example, the insured shall be reimbursed for the reasonable amount, which would have been collectible under the policy if such allegations are not subsequently proven. The exclusion that we're talking about here, the exclusion for arising out of the contract, does not have that language. We have very basic and well-settled law with regard to the interpretation of the contract. In our brief, we refer to the Latin phrase, but in English, it's quite simply, the inclusion of one is the exclusion of others. If you read this policy – Well, we need to know the Latin part of that. I'm sorry, Your Honor? I said, we even understand the Latin part of that. I know you do. I have trouble saying it. The district court, in a long and careful opinion, said that all of this is excluded by the arising out of clause. What's wrong with what the district court said? The district court, by doing that, you have to look at what she said to begin with. She first said – I apologize. The district court first said that all of these were wrongful acts, and that's what this policy was intended to cover, wrongful acts. And in the very next breath, the district court said, but they're all arising out of breach of contract. First of all, that cannot be so. For example, the most blatant one is fraud in the inducement. Fraud in the inducement is a claim that is based on pre-contract conduct, conduct that arose before the contract even existed. And, as we know, under the Eggleston case, that breach of contract, regardless – or rather, fraud in the inducement of a contract, can survive even if the contract never takes place or if the contract is fully performed. In either event, you can still have a fraud in the inducement claim. Now, how can that possibly arise out of a contract that didn't even exist yet? That's number one. Let me take you to another point. What is the current status of the American Motorist and the PJ Smith actions? Okay. The American Motorist case has been stayed. Stayed. Stayed, pending the outcome of the D&D decisions. And the Smith one? The PJ Smith case, there's been a finding. I believe we supplemented the record either by motion or by letter with regard to PJ Smith. There was a finding. There was no breach of contract. It has not been proven and cannot be proven. Okay. And, more importantly, in the D&D case, we know that the court found that D&D did not have the right to bring a breach of contract claim. Okay. Thank you, because your red light's on. I know it goes fast. All right. Good afternoon, Your Honor, or Honors. My name is Richard Olsemer from Tompkins, McGuire, Wachenfeld, and Barry, on behalf of the Apelli National Union Fire Insurance Company of Pittsburgh, PA. One of the thresholds – You represent the insurer. I represent the carrier, correct, the E&O carrier. One of the threshold – or the threshold issue for this court goes to our motion to dismiss the appeal as being an untimely application by the board. It's based upon what the trial court, the district court, had entered a final judgment in April of 2011, but we've noted that the true final decision in the underlying case was the stipulation of dismissal with prejudice, which basically disposed of all the remaining claims amongst the parties. At that point, the time to appeal was triggered. No application to extend that time to appeal was ever made by the board. Instead, what they did was 31 days after the entry of that, they filed for a motion for reconsideration based on the Flummerfeld decision. Pursuant to the local civil rule 7.1, you would have to file a motion for reconsideration within 14 days. However, if we look at the federal rules of civil procedure, the application to alter or modify a judgment should have been brought within 28 days of the final decision. You raised this in a motion, right? Yes, this is in a motion. Okay. Well, we'll take the motion under consideration, but I think you better get on with the substance of your argument. Okay. I'm sorry, Your Honor. I thought we were addressing both today. Well, we are. We're considering them all, but there are some we're more interested in listening to than others. Okay. Well, with regard to the two, there are two notices of appeal which were consolidated. First, related to appealing the district court's denial of the second motion for reconsideration, which, as I just alluded to. That's the substantive one. Yeah. Exactly. And that focused on the Flummerfeld decision, whether or not that was an intervening change in the law of the state of New Jersey with regard to insurance. The law in New Jersey is very settled with regard to insurance, including exclusionary language found within policies. Arising out of has consistently been held to equate to originating from, growing out of, or having a substantial nexus to. That then ties into the American motorist case, which Flummerfeld in no way overturned. What Flummerfeld was concerned about was concurrent causes of a potential injury. In this, in Wendy Flummerfeld's situation, she went to a party. She was drinking. She had partake in some narcotics, and she passed out. In addition to those problems, we had the issue of she didn't get immediate medical attention. The New Jersey Supreme Court was faced in that instance, which of those causes, which independently could have brought about injury, was the trigger. What would be subject to a policy exclusion? What you had in that instance was the subject policy. It was a CGL policy, a comprehensive general liability policy. The issue was did an exclusion relating to the use or presence of illegal or dangerous drugs, did that in effect negate the whole issue of her use of alcohol and delayed medical treatment? That's what the New Jersey Supreme Court was focused in on in Flummerfeld. We did not have an intervening change in the law, which the Supreme Court in New Jersey reiterated, saying the familiar principles that apply in the instance of insurance are there. Exclusions which are plainly and unambiguously written will be enforced. They'll be narrowly construed, but if they're plain, they're out there, they'll be enforced. Secondly, that the reasonable expectations of the insured and public policy likewise stay. There's no change in Flummerfeld to the existing law. Was the district court in error in finding that there was no intervening change in the law? Absolutely not. This court has plenary review because that was a legal determination by the district court. The second appeal goes to the whole issue of the district court's treatment of the two motions for partial summary judgment. We had the initial motion related to the PJ Smith, who was the electrician on the projects, and the surety, AMIC. Those were two state court proceedings which were brought in 2005 against the board, which grew out of the construction project that the board was involved with. The second motion, the partial motion for summary judgment, related to the D&D action, which started out as the D&D sued because of the termination of one contract on the construction project, and then later we had the termination of D&D, the general contractor, in its entirety, and that resulted in the amended complaint where we had 16 counts. The original complaint consisted of seven counts, amended complaint, 16 counts. The claim, when it came in, as in actually for all claims, they were submitted to the carrier for review. The carrier determined, based upon a review of the complaint, that these actions related to or grew out of breach of contract. That's the arising out of issue. That's the arising out of issue. As I see it, there are two real issues in this case. One is the meaning of the arising out of, and the other is they're having substantial nexus with, which the district court thought was relevant, and the appellant argues that isn't. Well, the growing out of is a... Well, the arising out of is a... Arising out of is the key. Arising out of breach of contract. That's right. Substantial nexus is a definition of arising out of as determined by American Motorist, as further supported by Flummerfeld. And as I understand it, the appellant argues that the district court erred in saying it had to have or did have a substantial nexus with the arising out of clause. That's the argument, but if we look at... Am I right? But I see it as those two main issues. All these 16 things you can set aside. Right. If you look at what the district court did, pursuant to New Jersey insurance law, was take the complaints and put them down side by side with the insurance policy, E&O policy. Now, counsel is correct. You look at a judicial proceeding. If there are wrongful acts asserted, then you look at whether or not that's covered under a policy. However, it is then subject to the exclusions specified within the policy. And one of the exclusions, there are multiple exclusions, but one of the exclusions is arising out of breach of contract. And that's where... Well, I think that's the major exclusion, isn't it? It's absolutely a major exclusion. That's what we're talking about, yeah. Right. Because what we have in the PJ Smith and the AMIC action, the surety action, are strict claims of breach of contract, breach of good faith and fair dealing, and myriad... And the constitutional things as well. Pardon me? Yes. In the D&D action, civil rights claims had been asserted as well, but they all related to the contractual relationship between the plaintiff and the board. That's what the district court found. That's what the district court found, and that's what the record reflects. If we look at this, the whole relationship would not have taken place but for the contracts which had been entered into by the board and allegedly breached by the board. What about the fraudulent inducement to contract? That ties into entering into contract. We entered into the contract based upon the fraudulent inducement or the misrepresentations made by you, board, and to our detriment. We entered into this contract. So everything is, as I think the word used by the district court, and it ties into the Who Began decision, is endemic to all these causes of action related to the contractual relationship. Or had a substantial nexus. Which is a very broad application. Originating from or growing out of is slightly different than substantial nexus, but the Supreme Court in New Jersey, in looking at insurance, said that substantial nexus was a definition of arising out of. So that's where we look at all these causes of action which were asserted, but they all were endemic to or arose out of, originated from or had a substantial nexus to the contractual relationship and the breach of that relationship or alleged breach of that relationship by the board. That's a very broad construction of those words, isn't it? Arising out of? Yeah. But it's a settled construction in the state of New Jersey with regard to exclusionary language. For example, how did the board's intimidation of witnesses have a substantial nexus to the breach? I think the witness, it was, I think the focus of that was. I think it was count five. Right. I believe that related to the allegation was the board was intimidating a witness who would have given counter testimony as to the contractual relationship or how the contracts were arrived at. I don't have the complaint in front of me, so I can check in the brief. I think I addressed it when we went through the multiple counts. Yeah, you addressed it. Yeah. You did that with the. Yes, who would have allegedly supported. The 16 count, 16. Right. I believe it's at page 24 of our brief, 23-24, where we addressed count five of the D&D amended complaint. And the witness intimidation count or claim was that the witness would have supported D&D's position that it substantially performed its work under the contract. Once again, it ties into the contract. What really happened in this case? What was going on? I mean, what happened? I was not involved in the D&D case. I'm involved in the coverage aspect, and I could suppose or offer suspicions as to what happened, but that probably wouldn't benefit the court. It looks like what happened was the board was dissatisfied with the general contractor's work and was looking for ways to negotiate either a reduction in what was being paid out or getting extra work. I don't know, and like I said, it's just a suspicion or just me surmising. Not having that record, I don't know. For the most part, these original suits don't seem to have been very successful against the board. Which I'm very happy about. That's great for the board. The big issue is attorney's fees, which are really big. Which is unfortunately what generates a lot of legal action is a fight over attorney's fees. But they're not before us now, I think. The amount of attorney's fees? Yeah. Absolutely not, because there's no coverage. We're not involved with it. Yeah, but I mean whether there's coverage or not for attorney's fees. The coverage, well, the E&O policy provided for $1 million in liability coverage and unlimited defense if it applied. Because of the breach of contract exclusion, there was an endorsement that provided, despite the fact we don't cover this, we'll extend $100,000 towards your defense. For each claim. For each claim, which the carrier did in fact do. The Zurich American covers some of the fees too, I guess. Absolutely. Yeah, the CGL. There must be an awful lot out there then. That's, yes, that's my understanding, but it's not in the record. But we have, yes, the CGL policy that was issued by Zurich did in fact pay a substantial amount. You paid money into the court, I think, didn't you? We actually paid it to the board's counsel. I see. We paid $100,000 towards the defense of the D&D case. We paid $100,000 towards the defense of the PJ Smith case. And we paid $100,000 towards the surety case. After the court, the district court, denied the first motion for reconsideration back in July of 2008. We said, okay, the court has spoken as to what our legal obligations are in the May 2008 summary judgment decision. Denied the application for reconsideration by the board. We will honor what the court has said, and we paid our money immediately. Okay, thank you. Thank you. How much did he save, Roberto? Five. Five, okay. As you said, Your Honor, two is, you can't say much in two minutes. Your Honor. You said five. Yeah, I was referring to the prior argument. I know. Your Honor, counsel's argument highlights the problem with where the district court went wrong. The district court analyzed this using American Motorist, using a rising out of the contractual relationship. That is not what the courts and Hoobagant tell us to do. It's a rising out of the breach of contract. In counsel's argument, in counsel's brief at page 16, he refers to endemic to the contractual relationship. The court, the district court, and they're in the 5-15-08 summary judgment decision, says the contractual relationship was endemic to all causes of action, and that's at PA 34. That is not what should have been analyzed for this exclusion. It's not whether it's endemic to the contractual relationship. Everything's endemic to the contractual relationship. It's whether it arose out of a breach of contract. And the fact that Hoobagant tells us to look at those cases and determine but for the breach of contract, do you have independently tortious claims? And here we have 15 out of 16 tort claims. Now, Hoobagant, did it really look properly at New Jersey law? I think it did. It did not have the benefit of Flommerfelt when it was decided. Does it cite to American Motorist? I don't think it does. It doesn't cite to it, but it does cite to the substantial nexus test, and therefore it encompasses what American Motorist was saying. But what it does do, it does tell us that you have to look at these independently tortious actions. Now, having hindsight, having the benefit of Flommerfelt, that is quite consistent with what Hoobagant was saying. Flommerfelt tells us, yes, you must go back and look at the causes. And it must be noted that it's inherently unfair. The same district court sitting in D&D went through a painstaking analysis of the claims on the motion to dismiss and found independently tortious claims and allowed them to go forward. And then the same court sitting in the insurance action says no and sweeps them all under the rug with one fell swoop. They're all arising out of the breach of contract. And although the district court says it, what you heard here today is exactly what actually happened. She found that they were all a substantial nexus to the contractual relationship, and that is far broader. In fact, that's why American Motorist is distinguishable, because that arising out of clause was not arising out of breach of contract. It was arising out of the employment relationship. There they were construing a broad exclusion, a relationship, the employment relationship. Here, arising out of is an act. The breach of contract is an act, a much, much narrower exclusion. On top of that, it's not even triggered because of the allegations. But wherever there are disputed multiple causations under Hoobegan, under Flommerfelt, it has to be resolved in favor of coverage and a defense, first and foremost a defense. It's well-settled law in New Jersey that if there are concurrent causes, if there are potentially covered claims, you must provide an unlimited defense until all of those claims, those potentially covered claims, go by the wayside. Even the language here in this policy talks about whether to defend any claim, and I'm referring to the policy itself at appendix page 210, and defend any claim against the insured alleging a wrongful act, even if such claim is groundless, false, fraudulent, and pay on behalf of the insured, all expenses incurred by the company in the defense. We start with the broad coverage portion of this policy because if you don't, you end up with a policy that just does not meet the reasonable expectations of any insurer. It is no insurance insurance. You cannot say that they are all wrongful acts without analyzing them, each one separately and independently, and then say they're all rising out of the breach of contract. Not in this case. Not in this case. Well. Did so in the D&D case. The district court went through it and found that they were tortious and allowed them to go forward because in the D&D case there was a motion. Well, which case are you appealing? Aren't you appealing all of them? I'm only appealing the insurance case. What I'm saying is as part of the record, the D&D decision is before Your Honors, and you can see how when the district court wanted to do a searching analysis of each claim, you can see it was done there and it wasn't done here. Well, whom do you represent? I represent the North Plainfield Board of Education, but only on the issue of insurance coverage. This is a separate action. It was removed to federal court. It was originated in state court. Oh, yeah, I know.  Any further questions? James? No. Okay. Thank you, Your Honor. Thank you. We will take this matter under advisement. We will send the disks to Judge Pollack. We will confer, and we will be back to you.